JESSE ELTING, RESPONDENT, v. CALVIN PALEN,
APPELLANT.

*Manure is a part of the freehold — an outgoing tenant who has not time, within the
rules of good husbandry, to restore it to the land cannot dispose of it.*

One Palen, under a lease expiring in April, 1887, occupied a farm which had
been sold in partition, in parcels, during the previous October, subject to the rights
of Palen and to his possession until the expiration of his lease. One Elting pur-
chased at such partition sale that portion of the farm containing the dwelling-
house and a barn. At this time the barn contained very little manure. This
had been largely increased by Palen, when he, in February, 1888, at the request
of another purchaser at said sale, began to cart the manure away to the portion
of the lands which had been acquired at the partition sale by said purchaser.

In an action brought by Elting to restrain Palen from so doing:

*Held*, that the manure belonged to the land, and to the purchaser at the partition
sale of that portion of the land upon which it was accumulated.

That Palen as outgoing tenant had no title to the manure, but would have been
entitled to restore it to any of the land leased by him had his lease been for a
sufficiently long term to have enabled him to do so within the rules of good
husbandry.

APPEAL by the defendant Calvin Palen from a judgment, entered
in the office of the clerk of the county of Ulster on the 2d day of
May, 1890, in favor of plaintiff, adjudging that the defendant be
perpetually restrained from removing certain manure mentioned
in the complaint in this action; and also from an order denying a
motion to set aside the verdict and for a new trial, after a trial
before the court without a jury, at the Ulster Circuit.

*A. T. Clearwater*, for the appellant.

*Bernard & Fiero*, for the respondent.

LEARNED, P. J.:

The defendant occupied, as tenant, a farm of some three hundred
acres, and his lease expired April 1, 1887. A partition sale of the
premises was had October 14, 1886, at which the plaintiff bought
forty-five acres, which contained the barn and dwelling-house.
Other persons bought other parcels; among them, Mrs. Varick
bought about forty-seven acres. The terms of sale as to all the land
stated that it was sold "subject to the rights of Calvin Palen, as

tenant, and the possession of said premises will be reserved until April 1, 1887, and also the winter grain sown thereon will be reserved and the right to the tenant of coming upon the said premises after April 1, 1887, and gathering same." On the farm, not on the part bought by the plaintiff, was also another barn used for storing hay. At the time of the purchase by plaintiff there were two or three loads of manure in the yard of the barn bought by him. On the seventeenth of February following the time of the commencement of this action there were 130. Just prior to the commencement of this action the defendant began carting away this manure from the plaintiff's barnyard and depositing it on that part of the farm purchased by Mrs. Varick. This he did at her request. He had carted away about thirteen loads. Thereupon the plaintiff commenced this action and obtained an injunction *pendente lite*, forbidding the defendant from carting away any more manure. On the trial this injunction was made final. And from the judgment the defendant appeals.

It does not distinctly appear whose tenant the defendant had been; probably the tenant of the deceased owner. Nor does it distinctly appear whether the heirs reserved to themselves the rent to become due from defendant up to April first. This may be possible, although contrary to the general rule. (Washburn on Real Property, 337; *Van Rensselaer* v. *Gallup*, 5 Denio, 454, 461.) The terms of sale reserve only the possession. It would seem, then, that the title passed to the several purchasers at the time they received their deeds; but that, owing to the defendant's existing lease, they could not take actual possession. The terms of the sale seem to have been intended simply to protect the rights of defendant as tenant, and to prevent any claim by the several purchasers that the contract of sale was broken by their inability to turn the defendant out of possession. The several purchasers, therefore, becoming owners of their several parcels, must have acquired severally the rights towards the defendant which a land-owner would have in respect to a tenant in such circumstances. And these several purchasers were not co-tenants or joint-tenants. They held their respective purchases in severalty.

If the defendant's lease had continued for another year, then it is very probable that, in the ordinary course of good husbandry, he

could have spread this manure upon any proper part of the farm, because the annual spreading of the manure is the ordinary mode. He would have been entitled to have, by this mode of use, the benefit of the accumulated manure. But his lease was to expire April first. His carting this manure to a part of the farm bought, not by the plaintiff, but by some other person, was the same as if he had carted it to some land which had never been part of the farm. The previous owners of the farm had, by the partition sale, divided it, and each purchaser held his purchase separately.

In *Middlebrook* v. *Corwin* (15 Wend., 169), the landlord sued the tenant for manure taken away from the farm shortly before the expiration of the term, and it was held that he could recover. The court said the manure belonged to the farm, and the tenant had no more right to remove it than he had to remove a fixture. Such is the rule in 2 Kent's Commentaries, 347.

In *Goodrich* v. *Jones* (2 Hill, 142), the court held that manure made a part of the freehold, though laid up in heaps in the barnyard. This was said to be the doctrine between landlord and tenant, and to be stronger as between vendor and vendee.

The same is held in *Daniels* v. *Pond* (21 Pick., 367) and *Kittredge* v. *Woods* (3 N. H., 503), which last case is approved in *Goodrich* v. *Jones* (*supra*); see, also, *Lassell* v. *Reed* (6 Greenleaf [6 Me.], 222).

It is worth noting also that this is a rule not of our law only. By the Roman law manure went to the purchaser of the farm, whether the manure was in a heap or in a stable. *Fundo vendito vel legato sterculinum et stramenta emtoris et legatarii sunt * * * nec interest in stabulo jaceat an acervus sit.* (Dig. XIX, 1, 17, 2; see, also, Dig. XLIII, 24, 7, 6.)

It is urged by the defendant that this manure was not in existence when the plaintiff purchased, but was made subsequently. Then, as we have above seen, the defendant was, after the purchase, in the position of tenant to the plaintiff. And the rule is equally applicable in that relation.

In regard to the case cited by defendant of *Ruckman* v. *Oatwater* (28 N. J. L., 581), holding that manure in a barnyard does not pass to the grantee, we can only say that it is contrary to the decisions of our State above cited, and, however well considered, we cannot follow it.

The defendant urges the rights of co-tenants or joint-tenants as to personal property. But we think that those rights are not here involved. Of course, there is a certain difficulty in treating such an article as manure in a farm barnyard as real estate. But the difficulty is no greater than in the case of hop-poles. (*Bishop* v. *Bishop*, 11 N. Y., 123.) And the rights of all parties seem to be best settled when the manure is said to belong to the farm, and not to the tenant.

Nor do we think that any difficulty arises from the fact that the tenant's lease extended over the whole 300 acres. He had no right to the manure as owner, though he might, as above stated, have restored it to the land. And when the owners of the land divided it by their sale, we see no injustice in saying that the manure belonged to that separate portion of the farm on which it was accumulated. For, as above pointed out, it could not, in good husbandry, during what remained of defendant's term, have been applied for his benefit over the farm generally.

Judgment affirmed, with costs.

LANDON, J., concurred ; MAYHAM, J., not acting.

Judgment affirmed, with costs.